UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MARY WILLIAMS,

       Plaintiff,

                                   **COMPLAINT**
                                **JURY TRIAL DEMANDED**

-against-

NORTHWELL HEALTH INC., JUDE KOTSOVOLOS,
Individually, STEPHANIE RUSSO, Individually,
THOMAS GUY, Individually, JACQUELINE
KELLY, Individually,

       Defendants.
--------------------------------------------------------x

Plaintiff, Mary Williams, (hereinafter "Plaintiff") by her attorneys, SLATER SLATER SCHULMAN LLP hereby submits this Complaint and complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the New York State Human Rights Law, New York State Executive Law § 296, et seq. ("NYSHRL"); and The Americans with Disability Act ("ADA") 42 U.S.C. Section 12101. Plaintiff seeks damages to redress the injuries she suffered because of being exposed to gender/sexual discrimination, hostile work environment based on sex, retaliation, disability discrimination, failure to accommodate, and constructive discharge/wrongful termination.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state laws pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief, occurred within the Eastern District of New York.

## PROCEDURAL PREREQUISITES

5. On or around September 24, 2019, Plaintiff hand delivered a discrimination complaint to the New York State Division on Human Rights ("NYSDHR") against Defendant employer as set forth herein.

6. On or about November 25, 2020, the EEOC mailed a Right to Sue Letter to Plaintiff.

7. On or about February 17, 2021, the EEOC mailed a Right to Sue Letter to Plaintiff.

8. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

## PARTIES

9. Mary Williams ("Plaintiff") is an individual female who resides in Suffolk County, New York.

10. At all times relevant Plaintiff was an employee of Defendant Northwell Health, Inc. (Hereinafter "Northwell" "Defendant", and "Defendants").

11. At all times relevant herein, Plaintiff was an employee of Defendant Hospital as defined under the aforementioned statutes.

12. At all times herein relevant Defendant Northwell was and is a domestic entity duly organized and existing under and by virtue of laws of the State of New York.

13. At all times relevant Defendant Northwell was Plaintiff's "employer" for purposes of the aforementioned statutes.

14. Defendant Jude Kotsovolos (Hereinafter "Defendant" and "Defendants") is an individual female.

15. Defendant Kotsovolos was and is a supervisor for Defendant Northwell.

16. Upon information and belief Defendant Kotsovolos had authority regarding Plaintiff's day to day work experience and could make decisions regarding the terms and conditions of Plaintiff's employment.

17. Defendant Stephanie Russo (Hereinafter "Defendant" and "Defendants") is an individual female.
18. Defendant Russo was and is a supervisor for Defendant Northwell.
19. Upon information and belief Defendant Russo had authority regarding Plaintiff's day to day work experience and could make decisions regarding the terms and conditions of Plaintiff's employment.
20. Defendant Jacqueline Kelly (Hereinafter "Defendant" and "Defendants") is an individual female.
21. Defendant Kelly was and is a supervisor for Defendant Northwell.
22. Upon information and belief Defendant Kelly had authority regarding Plaintiff's day to day work experience and could make decisions regarding the terms and conditions of Plaintiff's employment.
23. Defendant Thomas Guy (Hereinafter "Defendant" and "Defendants") is an individual male.
24. Upon information and belief Defendant Guy was Plaintiff's coworker during all relevant time periods.
25. Defendant Northwell is a covered employer within the meaning of Title VII, the New York State Human Rights Law, and the Americans with Disability Act, and at all relevant times, employed Plaintiff or supervised Plaintiff's employment.
26. Plaintiff is a covered employee within the meaning of the Title VII, the New York State Human Rights Law, and the Americans with Disability Act ("ADA") 42 U.S.C. §§ 12101.

**FACTS**

27. Plaintiff was hired to work at Peconic Bay Medical Center, which subsequently merged with Defendant Northwell Health, as a registered nurse in May 2004.
28. Plaintiff was assigned to the Operating Room "OR" and worked in the OR during her entire tenure with the hospital.
29. Throughout her employment, she regularly received good performance evaluations and had never previously been the subject of any formal or informal discipline.

30. In or about June 2016 Defendant Stephanie Russo came to Peconic Bay Medical Center as part of the Northwell team, in the position of Director of Perioperative Services, with overall supervision and oversight of the OR staff.

31. In this position, Defendant Russo supervised Plaintiff's employment environment.

32. Defendant Russo assigned Plaintiff to the position of Head Nurse for OR on a rotating basis.

33. During this same time frame, Defendant Russo assigned Plaintiff to a rotating position of emergency on call obstetrics nurse.

34. In or about August 2016, Defendant Russo hired Defendant Thomas Guy from Southampton Hospital to the position of Surgical Technician at Peconic Bay Medical Center in the operating room.

35. In that capacity, Defendant Guy was assigned to the OR to work under Plaintiff's supervision as charge nurse, as well as on a day-to-day basis.

36. From the outset, Defendant Guy engaged in abusive conduct towards Plaintiff because of her sex/gender.

37. Defendant Guy regularly stated that he would not take orders from Plaintiff.

38. Defendant Guy did not treat any men in the same disrespectful manner.

39. Defendant Guy routinely engaged in conduct of sex/gender discrimination towards Plaintiff as well as other female nurses and OR staff.

40. Defendant Guy consistently referred to Plaintiff and other female staff as "**BITCHES**" and "**WHORES**."

41. Plaintiff recognized this inappropriate language to be based on her gender as Defendant Guy did not refer to male employees as "**BITCHES**" or "**WHORES**."

42. These misogynistic terms were not used sparingly by Defendant Guy towards the Plaintiff and other females in the workplace.

43. Defendant Guy was also physically aggressive towards Plaintiff and other female employees.

44. Defendant Guy routinely charged at his female co-workers as if he were going to run them down.

45. Defendant Guy was routinely physically aggressive with his female co-workers by way of pushing and shoving female OR nurses and staff.

46. The above inappropriate physical contact was not directed towards his male co-workers.

47. Plaintiff made several complaints to her immediate supervisor Maureen O'Sullivan, as well as Defendant Jude Kotsovolos and Defendant Russo, about the sexual discrimination, harassment, and hostile work environment Defendant Guy created and continued to create.

48. On one occasion after complaining to Defendant Kotsovolos, Defendant Kotsovolos stated to Plaintiff "I don't understand why no one likes you."

49. Defendants did not take either immediate or remedial action after the complaint by Plaintiff.

50. Plaintiff consistently complained to Defendants regarding the gender discrimination and hostile work environment created by Defendant Guy:
    - **January 20, 2017 Verbal Complaint to Maureen O'Sullivan RN, OR Manager**
    - **February 24, 2017 Verbal Complaint to Maureen O'Sullivan and Defendant Stephanie Russo RN, Director**
    - **March 17, 2017 Verbal Complaint to Defendant Jude Kotsovolos RN, OR Manager**

- **April 2017- June 2018 Weekly Verbal Complaints to Defendant Kotsovolos and new OR manager Defendant Kelly RN**

- **June 2018 Verbal Complaint to OR manager Defendant Kelly**

- **July 2018 Verbal Complaint to Defendant Russo**

- **August 16, 2018 Written Complaint to Defendants' Human Resources**

- **September 25, 2018 Verbal Complaint to Defendant Kelly**

- **October 8, 2018 Written Complaint via text message to Defendant Kelly**

- **October 16, 2018 Verbal Complaint to Human Resource Director, Lauren Lease**

- **October 24, 2018 Verbal Complaint to Human Resource Director Lauren Lease**

- **November 1, 2018 Verbal Complaint to Human Resource Director Lauren Lease**

- **November 6, 2018 Verbal Complaint to Defendant Kotsovolos and Defendant Russo**

- **November 7, 2018 Verbal Complaint to Human Resource Director Lauren Lease**

- **November 30, 2018 Verbal Complaint to Defendant Kelly**

51. For over a year Defendants ignored Plaintiff's complaints and allowed the environment to worsen.

52. There was no investigation of Plaintiff's complaints as required by Defendant Northwell's policy for well over a year.

6

53. Defendant Northwell did not take or request a written statement from Plaintiff and Defendant Northwell did not provide Plaintiff with a complaint form to explain her complaints.

54. Instead of assisting with rehabilitating the work environment Defendant Russo permitted Defendant Guy's harassing and hostile conduct to go unchecked, which resulted in him becoming even more emboldened, openly threatening and hostile towards Plaintiff and other female OR staff.

55. Defendant Guy acknowledged to Plaintiff that he knew that Plaintiff had made complaints about him.

56. The workplace continued to become even more hostile with Defendant Guy regularly berating female staff and bullying female staff, without management doing anything about it.

57. In or about January 2017 Defendant Guy cornered Plaintiff in an OR suite and told her **"LISTEN YOU BITCH, YOU DON'T TELL ME WHAT I CAN AND CANNOT DO**."

58. In the same sequence Defendant Guy pointed his finger in Plaintiff's face and stated, **"WHO THE FUCK DO YOU THINK YOU ARE, YOU ARE NOT MY MANAGER**."

59. Plaintiff reported this incident to Defendant's supervisor O'Sullivan who took no action.

60. Defendant Guy called Plaintiff from his home to Plaintiff's charge nurse phone at work, making threats to her after she told him previously, upon him touching a female patient, that he was not to touch any patient and had spoken to him about pushing a female nurse out of the way.

61. Defendant Guy yelled at Plaintiff on the phone, "**YOU BITCH, YOU FUCKING WHORE, DON'T YOU TELL ME WHAT I CAN AND CANNOT DO.**"

62. Plaintiff complained to management about Defendant Guy's threats, but again nothing was done.

63. In or about July 2018 Plaintiff complained to Defendant Russo regarding Defendant Guy's treatment of patients at Southampton Hospital and the history of his abusive behavior towards females and how his abuse of females was continuing in his current OR position towards her and other female OR staff.

64. Almost immediately, and in retaliation for Plaintiff's protected activity, Defendant Russo reduced Plaintiff's rotating assignment as OR Charge Nurse, causing a negative impact on Plaintiff's pay and a demotion which resulted in a substantial change in Plaintiff's terms and conditions of employment.

65. The negative impact included a change in Plaintiff's title, status, assignments duties and responsibilities from an administrative position to a staff nurse position.

66. Defendants retaliated against and subjected Plaintiff to a material adverse change in her terms and conditions of employment, for no reason other than engaging in protected activity.

67. After the meeting with Defendant Russo, Defendants removed Plaintiff off the set schedule which she had been on for nearly five (5) years.

68. This was clearly retaliation for Plaintiff making a complaint about the sexual discrimination by Defendant Thomas.

69. When Plaintiff asked Defendant Russo to reconsider because she was aware of Plaintiff's other responsibilities as a first assistant, she refused.

70. There were other OR nurses who had set schedules, whose schedules Defendant Russo did not change.

71. As a result, Plaintiff lost income by not being able to do the first assisting, which the hospital had known about from the outset when she started doing this work and never objected.

72. In addition to Plaintiff's previous complaints about Defendant Guy's sexual harassment of female OR staff, on or about August 16, 2018, she made a complaint about Defendant Guy to the Defendant's Human Resources Department, copying Defendant Russo, about how he was creating a hostile workplace.

73. There was no response from Defendant's Human Resources, and it would only get worse.

74. On September 25, 2018, while working with Defendant Guy in the OR, he physically attacked Plaintiff, causing her pain and fear.

75. Plaintiff ran out to the open area announcing that "Tom" had just shoved her with great force.

76. Head Nurse Defendant Kelly was standing nearby, and Plaintiff reported the incident to her.

77. Defendant Kelly's response was that she would speak to Defendant Guy.

78. Defendant Kelly did not address the situation because Plaintiff was required to continue working with Defendant Guy over the next several days.

79. Defendant employer was put on notice as to Plaintiff's complaints about Defendant Guy and his verbal and physical assaultive behavior towards her and how this was creating a hostile work environment through her several complaints to Head Nurse Defendant Kelly, Defendant Jude Kotsovolos and Defendant Russo.

9

80. Defendant employer's management did nothing to address the hostile environment and if anything, gave Defendant Guy cause to believe that he could continue and escalate his hostile sexual discrimination of Plaintiff which he did by continuing to verbally harass her on a daily basis.

81. The Defendants continuously failed to keep the workplace free from discrimination and harassment.

82. Defendant employer has an anti-harassment and discrimination policy as well as a policy against aggression, hostility, and violence in the workplace, to which it failed to adhere.

83. Consequently, Defendants forced Plaintiff to remain in a hostile work environment that was becoming worse and more intolerable by the day.

84. Defendants forced Plaintiff to work alongside Defendant Guy who had physically and verbally abused her and continued to do so, causing her great fear, anxiety, and physical pain.

85. Four (4) days following the day after Defendant Guy assaulted Plaintiff on September 25, 2018, Defendants forced Plaintiff to continue working with him.

86. The harassment in the form of yelling discriminatory terms and physical intimidation towards Plaintiff was so persistent and pervasive, that Plaintiff suffered under severe stress and was so fearful of there being no manager on the shifts she worked with him, caused her to suffer a physical ailment while on duty.

87. As a result of the emotional distress and hostile environment Plaintiff was rushed to the hospital ER where she was treated for supraventricular tachycardia and was not permitted to return to work that day.

88. Plaintiff was told by the head cardiologist to follow up with cardiac treatment and she was put on cardiac medication, none of which she had ever had reason to take before.

89. Plaintiff advised her immediate supervisor Defendant Kelly of her physical ailment which resulted from having to work with Defendant Guy.

90. Plaintiff notified her Supervisor Defendant Kelly on October 8, 2018 that she would be seeing a cardiologist and inquired whether she had spoken to Defendant Guy.

91. Plaintiff also advised Supervisor Defendant Kelly that she was becoming too stressed over the situation with Defendant Guy.

92. Plaintiff made a police report and filed a complaint with the Riverhead Town Police regarding Defendant's Guy's physical assault and informed Supervisor Defendant Kelly of the police report.

93. Plaintiff advised Supervisor Defendant Kelly and Defendant Russo of her physical disability of a cardiac condition and stress and anxiety and requested a reasonable accommodation of being assigned a schedule opposite to Defendant Guy's schedule.

94. During the same meeting, Plaintiff disclosed that she suffered from the following physical conditions that impacted her daily life:

- She could not think clearly
- She was constantly afraid
- Anxious
- Multiple episodes of tachycardia and supraventricular tachycardia on duty and at home
- Taking heart medication every day
- Change in bowel habits

- Frequent bathroom breaks
- Loss of appetite
- Trouble sleeping

95. Plaintiff's request for a reasonable accommodation would have allowed her to continue performing the essential duties of her employment.

96. Supervisor Defendant Kelly and Defendant Russo refused Plaintiff's request and assigned her to one day a week of working with Defendant Guy, which included hours after 5:00 p.m. when there was fewer staff around and no supervisor.

97. This schedule forced Plaintiff to leave early, causing her to use her leave time, to avoid having to work alone with Defendant Guy.

98. On other occasions, she used her leave time to not work on the days she was assigned to work with Defendant Guy.

99. Defendant Northwell was made aware of her disability through her doctor's documentation and her own correspondence.

100. Plaintiff was diagnosed with a cardiac condition, post-traumatic stress disorder and irritable bowel syndrome, all of which affected her digestive and cardiac systems and significantly affected major life activities including sleeping, thinking, and working.

101. On or around October 31, 2018, Defendants informed Plaintiff that they did not substantiate her complaint of physical assault by Defendant Guy and that she would have to work two (2) days with him instead of the one day as previously told.

102. On or around November 1, 2018, Defendants reiterated that there was no workplace violence, and that Plaintiff would continue working with Defendant Guy.

103. This is despite over a year of complaints by Plaintiff regarding Defendant Guy's inappropriate conduct in the workplace.

104. During this same November 1, 2018 meeting, Defendants denied Plaintiff's request for a reasonable accommodation.

105. On or around November 5, 2018, Plaintiff sent a text to Defendant Kotsovolos that management was not accommodating the shift change and that she was extremely uncomfortable working shifts with Defendant Guy due to the continuing harassment.

106. Defendant Kotsovolos responded that she could not do anything about it, and she thought Plaintiff will be "ok" because it is "really busy."

107. On or about November 6, 2018, Plaintiff made verbal complaints to Defendant Kotsovolos and Defendant Russo that she was afraid for her life and having cardiac issues due to Defendant Guy's ongoing harassment.

108. Plaintiff sent a text message to Defendant Kotsovolos and Defendant Kelly, while she was on shift with Defendant Guy, at 4:25 p.m., that she needed to go home to get her heart medication.

109. Plaintiff met with Defendants Russo and Defendant Kotsvolos again on November 7, 2018 to request a change in her schedule.

110. Plaintiff explained to both that she was having panic attacks, heart palpitations, and stomach issues because she was so afraid of being near and working with Defendant Guy.

111. Defendants refused and Defendant Russo informed Plaintiff that she was tired of Plaintiff's complaints and that Plaintiff should go to Defendant's Human Resources.

112. This is yet another example of Defendants ignoring Plaintiff's protected acts and leaving her to work alongside her harasser.

113. Following this latest event, Plaintiff complained to Defendant's Director of Human Resources.

114. Defendants finally took some action and disciplined Defendant Guy for "Aggression, Hostility, and Violence in the Workplace" in the late fall of 2018.

115. Defendants "encouraged" Defendant Guy to attend a single "Culture of Care" class as a form of making the workplace safe from his "foul language and verbal threats to his co-workers."

116. It is not surprising that despite the written warning and the multiple meetings between Plaintiff and Defendants, Defendant Guy continued to harass Plaintiff both verbally and physically.

117. Plaintiff continued to complain to Defendant Kelly, but her complaints were still ignored, and nothing was done to fix the work environment.

118. Due to the continued harassment and lack of action by Defendants, Plaintiff was forced to either take time off on days where she was assigned to work late with Defendant Guy without proper supervision or leave early.

119. Due to the stress of the work environment Plaintiff started to take cardiac medication to slow down her heart which resulted in her becoming tired and physically unable to work.

120. Plaintiff continued to have panic attacks, anxiety, post traumatic stress, and severe depression.

121. Throughout the remainder of November 2018, Plaintiff continued to make complaints to Defendant Kelly regarding Defendant Guy's discriminatory and physically

aggressive conduct towards her. At no time did Defendant Guy treat his male co-workers in the same manner.

122. Plaintiff made another request for a reasonable accommodation, but it was again refused by Defendant Kelly.

123. Due to the negligence and refusal to remedy the workplace for well over a year, Plaintiff informed Defendants of her forced withdrawal from her employment on or around November 29, 2018.

124. Plaintiff's last day employed by Defendants was on or around December 3, 2018.

125. As a result of Defendants' continued harassment, Plaintiff suffered numerous injuries including economic and emotional damages.

126. Due to the harassment by Defendants, Plaintiff suffers from high stress and anxiety.

127. Plaintiff experienced emotional pain, suffering, inconvenience, and other non-pecuniary losses.

128. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants.

129. The above are just some of the examples of unlawful conduct to which Defendants subjected Plaintiff to on an ongoing basis.

130. Defendants intentionally discriminated against Plaintiff based on her gender/sex and because of her lawful complaints of discrimination.

131. Defendants exhibited a pattern and practice of not only discrimination but also retaliation.

## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII
**(Not Against Any Individual Defendant)**

132. Plaintiff repeats and realleges every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

133. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42. U.S.C. § 2000e(f).

134. At all relevant times, Defendant employed more than fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

135. Pursuant to Title VII, 42 U.S.C. § 2000e-2(a) it is unlawful for an employer to discharge an employee because of such employee's "sex/gender".

136. Defendant violated Plaintiff's rights under Title VII when Defendant created and maintained a hostile work environment based on sex/gender and a hostile work environment bases on her sex, and constructive discharge/wrongful termination.

137. Defendant also violated Plaintiff's rights under Title VII because the hostile work environment based on sex/gender led to Plaintiff's constructive discharge/termination.

138. But for Plaintiff's sex Plaintiff would not have been constructively discharged/terminated.

139. Defendant's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

140. As a result of Defendant's unlawful acts, Plaintiff suffers and continues to suffer damages, in form including, but not limited to, lost income, bonuses, lost future earnings and also suffered future pecuniary losses, severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, pain and suffering, and other non-pecuniary losses.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII
**(Not Against Any Individual Defendant)**

141. Plaintiff repeats and realleges each allegation made in the above paragraphs of this complaint.

142. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

143. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions, or privileges of employment because of its opposition to the unlawful employment practices of Defendant.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE LAW

144. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

145. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

146. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex, hostile work environment, and failure to accommodate due to her disability.

147. Plaintiff hereby makes a claim against Defendants under all the applicable paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE LAW

148. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

149. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

150. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding and abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE LAW

151. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

152. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

153. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE ADA
### (Not Against Any Individual Defendant)

154. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

155. Defendant's actions violate the Americans With Disabilities Act as amended, which prohibits discrimination based on disability.

156. Defendant, by and through its agents and/or employees, violated the Americans With Disabilities Act, in one or more of the following ways:

18

157. In that Defendant interfered with Plaintiff's privilege of employment on the basis of Plaintiff's disability

158. In that Defendant discriminated against the plaintiff in such a way that it adversely affected her status as an employee.

159. In that Defendant treated the Plaintiff adversely different from similarly situated non-disabled employees.

160. In that Defendant discriminated against the Plaintiff for needing a reasonable accommodation in the form of a shift change to escape the continued physical and mental health strain that accompanied working alongside Defendant Guy.

161. As a direct and proximate result of Defendant's unequal treatment and discrimination Plaintiff has been deprived of equal employment opportunities and employment.

162. As a further direct and proximate result of Defendant's discrimination of the Plaintiff, Plaintiff has been deprived of income and wages, and has been deprived of access of certain benefits to which she was entitled. Plaintiff has also lost or will lose in the future payment of bonus earnings, pension benefits, and interest.

163. As a further result of Defendant's discriminatory conduct, Plaintiff has suffered severe humiliation, embarrassment, emotional distress, and harm to professional reputation.

164. Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

165. Defendant's conduct towards the Plaintiff was arbitrary, discriminatory and retaliatory in violation of the ADA. The Defendant exhibited ill will, malice, improper motive, and indifference to the Plaintiff's civil rights.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Melville, New York
      February 22, 2021

SLATER SLATER SCHULMAN LLP

_____
John C. Luke, Jr., Esq.
445 Broad Hollow Road, Suite 419
Melville, New York 11747
*Attorneys for Plaintiff*