FILED
CLERK

11:25 am, Sep 25, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
MARY WILLIAMS,

                Plaintiff,            <u>MEMORANDUM & ORDER</u>
                                             21-CV-0963 (JS)(AYS)

    -against-

NORTHWELL HEALTH, INC.; JUDE
KOTSOVOLOS, individually;
STEPHANIE RUSSO, individually;
THOMAS GUY, individually; and
JACQUELINE KELLY, individually,

                Defendants.
-------------------------------X
APPEARANCES
For Plaintiff:        John C Luke, Jr., Esq.
                   Slater Slater Schulman LLP
                   445 Broad Hollow Road, Suite 419
                   Melville, New York  11747

For Defendants:       Daniel Sergio Gomez-Sanchez, Esq.
                   Littler Mendelson, P.C.
                   290 Broadhollow Road, Suite 305
                   Melville, New York 11747

SEYBERT, District Judge:

        Northwell Health, Inc. ("Northwell"), Jude Kotsovolos ("Kotsovolos"), Stephanie Russo ("Russo"), and Jacqueline Kelly ("Kelly") (together, with Kotsovolos and Russo, the "Individual Defendants", and collectively with Northwell, the "Defendants") move, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the Complaint of Plaintiff Mary Williams ("Plaintiff") (hereafter, the "Dismissal Motion").  (<u>See</u> ECF No. 40.)  For the reasons that follow, Defendants' Dismissal Motion is DENIED.

<u>BACKGROUND</u>

On April 27, 2020, Plaintiff and her spouse filed for Chapter 7 bankruptcy protection.  (See Bankr. Pet., Ex. A, ECF No. 41-1, <u>attached to</u> Gomez-Sanchez Decl., ECF No. 41; <u>see also</u> Opp'n, ECF No. 44, at 1.)  As part of her bankruptcy petition, Plaintiff was required to disclose all property of her estate on her bankruptcy schedules (hereafter, the "Schedules").  When prompted to list legal claims Plaintiff held against third parties, Plaintiff listed a claim estimated to be worth $50,000[1] against "Thomas Guy" ("Guy") for "sexual harassment and physical and emotional assault, resulting in PTSD" (the "Guy Claim").  (Bankr. Pet. at 16.)  Plaintiff stated the attorney handling this matter was "Darrin Solotoff" ("Solotoff") and provided Solotoff's contact information.  (<u>Id.</u>)  The Guy Claim was marked as "not yet commenced."  (<u>Id.</u>)  Additionally, as part of Plaintiff's Official Form 107, Plaintiff was asked if "[w]ithin 1 year before [she] filed for bankruptcy, [was she] a party in any lawsuit, court action, or administrative proceeding," (<u>Id.</u> at 39.)  Plaintiff answered affirmatively and detailed three such actions: (1) the

---

[1] Plaintiff's subsequent amendments to her Schedules withdrew the $50,000 valuation and replaced it with a valuation of "unknown." (Amendments to Schedules, Ex. B, ECF No. 41-2, at 12, 41, <u>attached to</u> Gomez-Sanchez Decl.)  Herein, citations within Plaintiff's Schedules and Amended Schedules will be to the PDF page number of the exhibit.

Guy Claim listed as pending in Suffolk Supreme, with case number 19-05000; (2) a disability action entitled Debtor v. Northwell Health Inc., listed as concluded before the New York State Division of Human Rights ("NYSDHR"); and (3) a disability claim listed as concluded against the Social Security Administration.  (Id.)

On May 20, 2020, during her Section 341 Hearing (the "341 Hearing"), Plaintiff disclosed she received a right to sue letter against Northwell and explained this claim related to the Guy Claim.  (See 341 Hr'g Tr., Ex. 7, ECF No. 43-7, at 4, attached to Luke, Jr., Decl., ECF No. 43)  Specifically, Plaintiff and the Trustee engaged in the following exchange:

> RLP[2]: do either of you have any lawsuits pending?
> Mary: uhh I do, yes
> RLP: and that is a sexual harassment lawsuit?
> Mary: correct
> RLP: Any other lawsuits pending?
> Mary: uhh I just received a right to sue against Northwell Health
> RLP: and is that related to the lawsuit against Thomas Guy?
> Mary: it is in a fact that he was the employee that assaulted me, umm but, they are the employer so I'm taking it a step further with them.
> RLP: I see, umm and you have retained Darren Solotoff . . . to bring that lawsuit.
> Mary: correct[.]

(Id.)  On August 14, 2020, Solotoff provided a letter to the Bankruptcy Trustee summarizing the details of the Guy Claim, and

---

[2] RLP refers to the Chapter 7 Bankruptcy Trustee, Robert L. Pryor.

further explained Northwell's role in the Guy Claim as Guy's employer. (See Solotoff Letter, Ex. 8, ECF No. 43-8, at 1-2, attached to Luke, Jr., Decl.)   Additionally, Solotoff providing an estimation of the Guy Claims' value. (Id.)   Solotoff's supporting valuation analysis previewed several of Northwell's defenses and provided that "to prevail," Plaintiff "would have to prove Northwell . . . discriminated against [her] and retaliated against her for complaining." (Id.)   By way of providing procedural background, Solotoff informed the Bankruptcy Trustee that, prior to filing for bankruptcy, Plaintiff filed a claim with the NYSDHR and requested a right to sue letter from the EEOC; he also provided the federal charge number associated with the NYSDHR action. (Id.)

Based in part upon Solotoff's "detailed analysis of the potential value of the claim," the Bankruptcy Trustee entered into a settlement agreement with Plaintiff to sell the Bankruptcy Estate's right, title, and interest in the Guy Claim, to wit, the legal claim "Debtor v. Thomas Guy-sexual harassment and physical and emotional assault, resulting in PTSD" to Plaintiff to $100,000. (Approval Motion, Ex. 9, ECF No. 43-9, ¶ 3, 16-19, attached to Luke, Jr., Decl.)   The sale of that claim, however, required bankruptcy approval; therefore, the Bankruptcy Trustee moved for such approval, supporting his Approval Motion, with Solotoff's

Letter, attached as an exhibit.  (Id. ¶ 17; Ex. B, attached to Approval Motion.)

On November 21, 2020, Plaintiff's bankruptcy case was closed.  (Williams Aff., ECF No. 43-14, ¶ 14, attached to Luke, Jr. Decl.; see also Trustee's Final Account and Distribution Report, Ex. C, ECF No. 41-3, attached to Gomez-Sanchez Decl.)

<u>PROCEDURAL HISTORY</u>

As previously articulated, on September 19, 2019, pre-petition, Plaintiff "filed a complaint at the NYSDHR against Northwell Health and Thomas Guy for disability discrimination, sex discrimination, age discrimination, hostile work environment, wrongful termination, and retaliation."  (Williams Aff. ¶ 2; see also NYSDHR Complaint, Ex. 1, ECF No. 43-1, attached to Luke, Jr. Decl.)  The Federal Charge number assigned to the NYSDHR Complaint was 16GC00048.  (See NYSDHR Complaint.)  Plaintiff further listed, as persons against whom she was filing her NYSDHR complaint, inter alia, the Individual Defendants.  (See NYSDHR Complaint, at 3, 9-10.)[3]

Sometime in April 2020, "Solotoff requested a dismissal of [Plaintiff's] claim with the NYSDHR."  (Williams Aff. ¶ 8.)  On April 29, 2020, the NYSDHR sent a letter to Plaintiff, Guy, and Northwell confirming it was informed Plaintiff "intends to pursue

---

[3] For the readers' convenience, citations within the NYSDHR Complaint will be to the PDF page number of the exhibit.

federal remedies in court, in which forum all issues concerning the question of the discrimination can be resolved"; consequently, it was contemplating dismissal of the NYSDHR complaint "for administrative convenience." (NYSDHR Letter, Ex. 4, ECF No. 43-4, attached to Luke, Jr., Decl.) On November 25, 2020, pursuant to the NYSDHR dismissal, Plaintiff received a right to sue letter from the EEOC. (Notice of Right to Sue, Ex. 5, ECF No. 43-5, attached to Luke, Jr. Decl.) On August 20, 2020, Plaintiff amended her Schedules removing the Northwell claim from her Statement of Financial Affairs. (See Amendments to Schedules, at 22.).

Subsequently, on February 22, 2021, Plaintiff commenced the instant action pursuant to "Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 . . . the New York State Human Rights Law, New York, State Executive Law § 296, et seq . . . and The Americans with Disabilities Act 42 U.S.C. Section 12101," seeking damages to redress injuries suffered due to exposure "to gender/sexual discrimination, hostile work environment based on sex, retaliation, disability discrimination, failure to accommodate, and constructive discharge/wrongful termination." (Compl., ECF No. 1, ¶ 1.) The unlawful conduct complained of began in 2017 and continued throughout the duration of Plaintiff's employment until November 2018. (See Compl. ¶¶ 50; 57-124.)

On June 25, 2021, Northwell filed an Answer on behalf of itself and the Individual Defendants.  (See Answer, ECF No. 22.) Guy answered the Complaint on July 28, 2021.  (See Verified Answer, ECF No. 24.)  On December 6, 2021, Northwell filed a request for a pre-motion conference (the "PMC Request") in contemplation of dismissing Plaintiff's Complaint for lack of standing.  (PMC Request, ECF No. 31.)  The Court granted Northwell's PMC Request, holding said conference on January 20, 2022.  (See Min. Entry, ECF No. 36.)  When informed Plaintiff intended to file a Motion to Reopen her bankruptcy case (the "Motion to Reopen") to amend her Schedules and explicitly disclose her claim against Northwell, the Court, on consent of the parties, stayed the case pending the Bankruptcy Court's decision on that matter.  (Id.)

On February 1, 2022, Bankruptcy Judge Scarcella denied Plaintiff's Motion to Reopen.  (See Order Denying Debtor's Motion to Reopen, Ex. 12, ECF No. 43-12, attached to Luke, Jr., Decl.; see also Mot. to Reopen Hr'g. Tr., Ex. 10, ECF No. 43-10, attached to Luke, Jr., Decl.)  In reaching his decision, Judge Scarcella found, inter alia, Plaintiff failed to establish that cause existed to reopen her case, "or that there [was] any asset to be administered." (Mot. to Reopen Hr'g Tr. at 26:6-9.)  Specifically, Judge Scarcella found:

> [t]his is not a question of reopening a
> bankruptcy case to permit the administration
> of newly discovered assets that weren't

> scheduled during the case and were otherwise
> not known to the Trustee.  This would just
> simply be reopening the case to amend the
> schedules to now list an asset that was known
> to the bankruptcy estate and was known to the
> Trustee.  So[,] I don't see any purpose in
> reopening the bankruptcy case.  The asset was
> known at the time of the bankruptcy case, when
> it was pending and before it was closed.

(Id. at 19-20:20-4.)

Subsequently, the parties submitted a Joint Status Report advising the Court of the decision.  (See Status Report, ECF No. 38.)  On April 25, 2022, Defendants filed the instant Dismissal Motion.  (See Dismissal Motion; see also Support Memo, ECF No. 42.)  On June 9, 2022, Plaintiff opposed Defendants' Dismissal Motion, (see Opp'n), to which Defendant replied on June 29, 2022.  (See Reply, ECF No. 45.)

DISCUSSION

I.   Legal Standard:

Rule 12(b)(1) Standing

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  While the Court must "generally accept the truth of a plaintiff's allegations at the motion to dismiss stage, the plaintiff still 'bears the burden of alleging facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'"  Calcano v. Swarovski N.

Am. Ltd., 36 F.4th 68, 75 (2d Cir. 2022) (quoting Cortland St. Recovery Corp. v. Hellas Telecomms., S.a.r.l., 790 F.3d 411, 417 (2d Cir. 2015)).  Thus, while the Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff . . . 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" Rosenberg v. McCarthy, Burgess & Wolff, Inc., No. 21-CV-2199, 2022 WL 3030390, at *2 (E.D.N.Y. Aug. 1, 2022) (quoting Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)). "Ultimately, 'the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'"  Id. (quoting Tandon v. Captain Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014)).  "When determining if a plaintiff has met this burden, a district court may consider evidence outside the pleadings." Brake v. Slochowsky & Slochowsky, LLP, 504 F. Supp. 3d 103, 108 (E.D.N.Y. 2020) (citing Makarova, 201 F.3d at 113); see also N.Y. Packaging II, LLC v. Intco Med. Indus., Inc., No. 21-CV-4388, 2023 WL 2970126, at *2 (E.D.N.Y. Jan. 3, 2023) ("where subject matter jurisdiction is challenged, a court 'may consider materials outside the pleadings, such as affidavits, documents and testimony'" (quoting U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp., 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001))).

II.   Analysis

   A.   Plaintiff's Schedules Were Sufficient To, and Did, Put
        the Bankruptcy Trustee on Inquiry Notice of Plaintiff's
        Claims Against Northwell and the Individual Defendants

        "When a bankruptcy petition is filed, the debtor must
file a financial statement with the bankruptcy court, including a
schedule of assets that are part of the estate." Eun Joo Lee v.
Forster & Garbus LLP, 926 F. Supp. 2d 482, 488 (E.D.N.Y. 2013)
(citing 11 U.S.C. § 521(a)(1)(B)).  This obligation includes
disclosing "causes of action possessed by the debtor at the time
of filing." Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d
473, 484 (2d Cir. 2014); see also Eun Joo Lee, 926 F. Supp. 2d at
489 ("[T]he debtor must disclose in the schedule all 'causes of
action owned by the debtor or arising from property of the
estate.'" (quoting Chartschlaa v. Nationwide Mut. Ins. Co., 538
F.3d 116, 122 (2d Cir. 2008))).  "Properly scheduled property that
has not been administered by the trustee at the close of the
bankruptcy case is abandoned, i.e., returned to the debtor by
operation of law." Taylor v. Fin. Recovery Servs, Inc., 252 F.
Supp. 3d 344, 350 (S.D.N.Y. 2017) (citing Chartschlaa, 538 F.3d at
122; 11 U.S.C. § 554(c)).  "However, undisclosed assets that the
trustee has not otherwise abandoned 'automatically remain property
of the estate after the case is closed.'"  Id. (quoting
Chartschlaa, 538 F.3d at 122; 11 U.S.C. § 554(d)).  Consequently,
"a debtor who fails to properly schedule a legal claim may be

barred from asserting that claim after the close of the bankruptcy case" for (1) lack of standing, (2) pursuant to the doctrine of judicial estoppel, or (3) both.  Id. (citing Chartschlaa, 538 F.3d at 122-23.)

"[F]ew courts have addressed the level of specificity with which debtors must describe assets in order to comply with 11 U.S.C. § 521(a)(1)."  Romeo v. FMA All., Ltd., No. 15-CV-6524, 2016 WL 3647868, at *6 (E.D.N.Y. June 30, 2016) (citing Tilley v. Anixter, Inc., 332 B.R. 501, 509 (D. Conn. 2005)).  Indeed, "'[t]here are . . . no bright-line rules for how much itemization and specificity is required' - rather, '[w]hat is required is reasonable particularization under the circumstances.'"  Id. (citing In re Mohring, 142 B.R. 389, 395 (E.D. Ca. 1992)).  As such, a debtor can satisfy her obligations under Section 521(a)(1) by putting the trustee on inquiry notice, that is, providing the trustee with enough information "to determine whether to investigate further."  Id.; see also Eun Joo Lee, 926 F. Supp. 2d at 489 ("courts typically look at whether the schedule gives the trustee enough information about the claim so he or she can decide if the claim is worth pursuing") (collecting cases).  As such, "debtors' schedules need not identify every potential cause of action, every possible defendant, or even any defendant at all, so long as a partially scheduled claim contains enough information that a reasonable investigation by the trustee would reveal the

11

claim ultimately asserted." Taylor, 252 F. Supp. 3d at 350 (quoting Bejarano v. Bravo! Facility Servs., Inc., 251 F. Supp. 3d 27, 31 (D.D.C. 2017)).

Defendants argue that Plaintiff lacks standing to bring the present action because Plaintiff failed to disclose her claims "against Northwell and the Individual Defendants" in her Schedules. (Support Memo at 6-7.) As such, Defendants contend any claims Plaintiff has against them "now constitute[s] property of the bankruptcy estate, to be administered by the bankruptcy trustee." (Id. at 7.) To the extent Plaintiff argues she disclosed details of her claims against Northwell to the Trustee during her Section 341 Hearing, Defendants contend such "oral disclosure . . . is insufficient and is not a substitute for disclosure on a bankruptcy schedule." (Id. at 9.) Likewise, notwithstanding Plaintiff's agreement to purchase the Bankruptcy Estate's right, title, and interest in the Guy Claim, Defendants aver "[t]he Bankruptcy Agreement does not . . . relate to, or acknowledge, the Trustee's understanding that the Plaintiff's potential claims were also against Northwell and the Individual Defendants." (Id.)

Plaintiff counters, "[b]y the time of Plaintiff's filing with the Bankruptcy Court she already filed an administrative complaint with the NYSDHR against both Northwell and Thomas Guy for disability discrimination, sex discrimination, hostile work

environment based on sex, age discrimination, and retaliation," and "she disclosed the existence of three lawsuits involving either Thomas Guy or Northwell" within her schedules.   (Opp'n at 4.) Additionally, Plaintiff highlights she informed "the Trustee about Defendant Northwell at the 341 Hearing."  (Id. at 4-5.)  Plaintiff avers the disclosures in her Schedules, together with information relayed orally to the Trustee during her Section 341 hearing, were "informative enough that the Trustee had conversations with Plaintiff's then attorney[,]" Solotoff, which culminated in Solotoff drafting "a letter with a valuation which also included the caption: 'Mary Williams v. Thomas Guy and Northwell Inc.'" (Id. at 5.)   Furthermore, Plaintiff emphasizes that during the hearing on her Motion to Reopen, the Trustee affirmed the Bankruptcy Estate settled the Debtor's claim against Guy and Northwell Health.  (Id.)

Here, the Court finds Plaintiff's: (1) scheduling of the Guy Claim; (2) disclosure of three cases, one including Northwell, on Form 107; and (3) disclosure of her claim against Northwell during her Section 341 Hearing, were sufficient to put the Trustee on inquiry notice that the Guy Claim also encompassed claims against Northwell and the Individual Defendants.  Indeed, because of these disclosures, the Trustee uncovered the precise nature of Plaintiff's claims against Northwell and the Individual Defendants when he investigated the Guy Claim prior to settling the Bankruptcy

13

Estate's interest in it.   In the Trustee's own words, the Bankruptcy Estate:

> settle[d] the Debtor's discrimination claim against Thomas Guy and Northwell Heath . . . we had an analysis from the attorney that the Debtor had gone to prepetition who we had believed she was considering to retain to prosecute the action. And he had given me an opinion and an analysis of the case where he concluded that, absent going to trial, which would have taken years, the settlement parameters would have been somewhere between $50,000 and $75,000.

(Mot. to Reopen Hr'g Tr. at 7:6-21(emphasis added).)   Solotoff's Letter did more than provide a valuation of the Guy Claim; it further detailed the factual context in which the claim arose, including Northwell's role as Guy's employer.   (Solotoff Letter at 1-2.)   Moreover and significantly, based upon his investigation, the Trustee determined settlement of the Guy Claim for $100,000 represented a strong recovery for creditors because, inter alia, the "offer . . . was in excess of what" Solotoff, "concluded [the Bankruptcy Estate] would receive[,]" unless it went to trial and spent years litigating the action, "which [would] delay a distribution to creditors."   (Mot. to Reopen Hr'g Tr. at 8:15-19.) The purpose of the Schedules is to facilitate the Trustee's ability to investigate and make an educated evaluation as to whether to pursue, abandon or settle a claim; that is precisely what occurred in this case.   See 4 Collier on Bankruptcy 521.06[1] ("The purpose of the schedules is to give interested parties sufficient

information to decide whether they want to engage in further inquiry"); see also Eun Joo Lee, 926 F. Supp. 2d at 489-90 ("It is sensible to require debtors to provide enough information for the trustee to be able to determine whether it is in the best interests of the estate to pursue the claim.  If the trustee cannot evaluate the claim, then the estate's creditors may be deprived of a valuable asset.")

Defendants' argument that Plaintiff purchased from the Estate only the Guy Claim, and that the settlement agreement "does not . . . relate to, or acknowledge, the Trustee's understanding that the Plaintiff's potential claims were also against Northwell and the Individual Defendants",[4] is unavailing in light of Plaintiff's initial disclosures, her representations to the Trustee at her Section 341 hearing, the Trustee's subsequent discussions with Solotoff, and Solotoff's letter to the Trustee detailing the factual context of that claim.[5]  Regardless, "the

---

[4] Notwithstanding a debtor is not required to identify every possible defendant in her schedules, by providing the details of her NYSDHR claim on Form 107, together with Solotoff's Letter in which she provided the NYSDHR Claim's Federal Charge number, "a minimal investigation by the Trustee" would have revealed that the factual context in which Plaintiff's claim against Guy arose implicated Northwell and the Individual Defendants.  In fact, Northwell was a named party in the NYSDHR action, and the Individual Defendants were listed in Section 3 of the Employment Complaint Form.  (See NYSDHR Complaint, at 4-5, 11.)

[5] To argue that the Trustee was unaware, or did not understand, the Guy Claim also encompassed Plaintiff's claims against Northwell and the Individual Defendants is doubly spurious given

Bankruptcy Code does not require every component of a cause of action to be spelled out on a debtor's schedule." In re Furlong, 660 F.3d 81, 87 (1st Cir. 2011) (citing In re Bonner, No. 04-8101, 2005 WL 2136204, at *4 (6th Cir. BAP 2005)). Cf. Tilley, 332 B.R. at 510-11 (reasoning the scheduling of one claim does not amount to the proper scheduling of another claim where the first claim does not put the trustee on inquiry notice to investigate the second). Likewise, a debtor need not list in her schedules every possible defendant to a cause of action, so long as a partially scheduled claim contains enough information that a reasonable investigation by the trustee would reveal the claim ultimately asserted. See, e.g., Eun Joo Lee, 926 F. Supp. 2d at 490 (finding debtor adequately disclosed FDCPA claim despite omitting individual defendant's identity where "a minimal investigation by the trustee would have revealed that [the individual defendant] was a potential defendant in any such action").

The cases upon which Defendants rely are factually inapposite. For example, in Reyes v. Sears Holdings Corporation, plaintiff-debtor failed to disclose pre-petition NYLL claims. No. 17-CV-4719, 2019 WL 3754197, at *2 (E.D.N.Y. Aug. 7, 2019). Plaintiff-debtor did not contest his failure to disclose the NYLL

---

Solotoff's Letter was affixed to the Settlement Agreement as an exhibit by the Trustee when he presented it to the Bankruptcy Court for approval. (See Approval Motion, ¶ 3, 12-19; Ex. B.)

claims but averred "because he did not know he had NYLL causes of action when he filed his petition, he was absolved of any disclosure obligation and . . . maintain[ed] standing to pursue [those claims]." (Id.)   In finding plaintiff-debtor lacked standing to pursue his NYLL claims, the <u>Reyes</u> court stated plaintiff-debtor's "lack of knowledge and ignorance of the legal significance of the facts underlying his NYLL causes of action do not alter their status as property of the bankruptcy estate." (<u>Id.</u> at *5.)   Likewise, in <u>Ibok v. SIAC-Sector Incorporated</u>, it was undisputed that plaintiff-debtor failed to disclose in writing the claims at issue in his bankruptcy petition.   No. 05-CV-6584, 2011 WL 293757, at *4 (S.D.N.Y. Jan. 31, 2011).   While plaintiff-debtor claimed to have orally informed the trustee of the claims during his Section 341 hearing, the transcript of the hearing "reflect[ed] that . . . [plaintiff-debtor] made no mention of the existence of th[e] lawsuit and [in fact] affirmatively denied that he was . . . suing anyone." (<u>Id.</u> at *5.)[6]   That is not what occurred in this instance.

---

[6] Other cases offered by Defendants are, similarly, distinguishable. <u>See, e.g.,</u> <u>Deutsche Bank Nat'l Tr. Co. v. Thompson</u>, No. 18-CV-0793, 2019 WL 1789905, at *3-4 (D. Conn. Apr. 24, 2019) (finding trustee's abandonment of two causes of action disclosed on plaintiff-debtor's schedules "encompassed only" the two scheduled cases "not any causes of action plaintiff had yet to pursue in any court and that were not listed in his bankruptcy schedules," consequently, because the claims were never disclosed they remained property of the bankruptcy estate); <u>Ardese v. DCT, Inc.</u>, No. 06-CV-0012, 2007 WL 2286270, at *7-8 (E.D. Okla. Aug. 6,

Rather, the Court finds Plaintiff adequately disclosed the Guy Claim which encompassed her claims against Northwell and the Individual Defendants and, by virtue of her settlement with the Bankruptcy Estate, has standing to pursue those claims in the instant action.

### B. Based Upon Plaintiff's Prior Disclosure of her Claims Against Northwell, Judicial Estoppel is Inapplicable

"Judicial estoppel is often applied 'to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy.'" Azuike v. BNY Mellon, 962 F. Supp. 2d 591, 598 (S.D.N.Y. 2013) (quoting Ibok v. SIAC-Sector Inc., 470 F. App'x 27, 28 (2d Cir. 2012) (further citation omitted)). "In the bankruptcy context, 'the rationale for [judicial estoppel] is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.'" Negron v. Weiss, No. 06-CV-1288, 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006) (quoting Kunica v. St. Jean Fin.,

---

2007) (finding, notwithstanding plaintiff-debtor's later agreement with trustee to purchase the estate's right, title, and interest in the at-issue claims, judicial estoppel applied where plaintiff-debtor failed to disclose the existence of her pre-petition claims on her schedules, received a discharge, and then later moved to reopen her bankruptcy case to disclose those claims); Wieburg v. GTE Southwest Inc., 272 F.3d 302, 307 (5th Cir. 2001) (holding plaintiff-debtor lacked standing to bring claims in her own name, notwithstanding a settlement agreement permitting her to do so, where the settlement agreement "clearly recognize[d] that the claims belong, not to [plaintiff-debtor], but to the bankruptcy estate").

Inc., 233 B.R. 46, 58 (S.D.N.Y. 1999) (further citation omitted)). Specifically, judicial estoppel applies when: (1) "a party's later position is clearly inconsistent with its earlier position"; (2) "the party's former position has been adopted in some way by the court in the earlier proceeding"; and (3) "the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp., 951 F. Supp. 2d 479, 494 n.6 (S.D.N.Y. June 25, 2013) (quoting DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) (internal quotations omitted)); see also Julian v. Metro. Life Ins. Co., No. 17-CV-0957, 2021 WL 1226749, at *3 (S.D.N.Y. Mar. 31, 2021) (stating the "'two prerequisite elements,'" of judicial estoppel are "'(i) that the party against whom estoppel is asserted took an inconsistent position in a prior proceeding and (ii) that that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment'" (quoting Clark v. All Acquisition, LLC, 886 F.3d 261, 266 (2d Cir. 2018))).

"[F]ailure to identify a claim as an asset in a bankruptcy proceeding is a prior inconsistent position that may serve as the basis for application of judicial estoppel." Thomas v. JP Morgan Chase, N.A., No. 11-CV-3656, 2012 WL 2872164, at *7 (E.D.N.Y. July 11, 2012) (quoting Guay v. Burack, 677 F.3d 10, 17 (1st Cir. 2012))). The element of "adoption of the position by a

tribunal" is "'usually fulfilled [in the bankruptcy context] when the bankruptcy court confirms a plan pursuant to which creditors release their claims against the debtor.'" <u>Galin v. United States</u>, No. 08-CV-2508, 2008 WL 5378387, at *10 (E.D.N.Y. Dec. 23, 2008) (quoting <u>Negron</u>, 2006 WL 2792769 at *3).

Here, since the Court previously found Plaintiff sufficiently disclosed her claims against Northwell and the Individual Defendants as part of the Guy Claim, Defendants' assertion Plaintiff should be judicially estopped from bringing the instant claims in this Court falls at the first hurdle. Plaintiff did not represent she had no legal claims against Northwell or the Individual Defendants in her bankruptcy case; rather, Plaintiff adequately disclosed details sufficient to allow the Trustee to investigate and settle the Bankruptcy Estate's right, interest, and title in those claims. Consequently, Plaintiff is not estopped from bringing the instant action.

CONCLUSION

Accordingly, for the stated reasons, **IT IS HEREBY ORDERED that** Defendants' Dismissal Motion (ECF No. 40) is DENIED.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 25, 2023
       Central Islip, New York